# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNION EQUIPMENT FINANCE, LLC, a Nebraska limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>COLLIERS EQUIPMENT TRUSTEE, LLC, a Delaware limited liability company; COLLIERS FUNDING LLC, a Delaware limited liability company; COLLIERS SECURITIES LLC, a Delaware limited liability company; COLLIERS INTERNATIONAL GROUP INC., a Canadian corporation; and AVALANCHE ENERGY CAPITAL LLC, a Delaware limited liability company,<br><br>Defendants. | Court File No. 26-cv-1736 (LMP/DTS)<br><br><br>**DEFENDANT COLLIERS INTERNATIONAL GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      International is a Canadian corporation headquartered in Toronto ......................... 2

II.     Other Colliers entities pursue the Rhino Transaction ............................................. 3

III.    Plaintiff sues all of the Colliers entities, including International ............................. 4

ARGUMENT ..................................................................................................................... 4

I.      The Complaint Should Be Dismissed Against International for
        Lack of Personal Jurisdiction ................................................................................. 4

        A.      This Court does not have general personal jurisdiction over
                International ................................................................................................. 7

        B.      This Court does not have specific personal jurisdiction over
                International ................................................................................................. 8

                1.      The quality and quantity of International's contacts
                        with Minnesota do not support personal jurisdiction ....................... 9

                2.      Plaintiff's cause of action does not arise out of
                        International's contacts with Minnesota ......................................... 13

II.     All of Plaintiff's Claims Against International Should Be Dismissed
        for Failure to State a Claim Upon Which Relief Can Be Granted ........................ 15

        A.      The Court should dismiss Count I (Fraud) against International ................ 16

                1.      Plaintiff does not plead that International made any
                        fraudulent statements to Plaintiff .................................................... 17

                2.      Plaintiff cannot plausibly alleged reliance on International ............ 19

        B.      The Court should dismiss Count IX (Aiding and Abetting) against
                International ................................................................................................ 21

1. The aiding and abetting claim does not satisfy Rule 9(b) ................ 22

2. The aiding and abetting claim should be dismissed because the Complaint does not plausibly allege that International knew about or substantially assisted or encouraged any alleged tort ............................................................. 23

C. The Court should dismiss Count X (Civil Conspiracy) against International ...................................................................................... 27

D. The Court should dismiss Count XI (RICO) against International ............. 30

1. Plaintiff fails to allege International objectively manifested an agreement to participate in the alleged RICO conspiracy ........... 30

2. Plaintiff fails to state a claim for the underlying substantive RICO violation ................................................................................. 31

CONCLUSION ...................................................................................................... 34

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*,
564 F.2d 1211 (8th Cir. 1977)...................................................................... 5

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...................................................................... 10

*Aguilar v. PNC Bank, N.A.*,
853 F.3d 390 (8th Cir. 2017) ...................................................................... 30

*Ahlgren v. Muller*,
438 F. Supp. 3d 981 (D. Minn. 2020) ..................................................... 9, 15

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
949 F.3d 417 (8th Cir. 2020)....................................................................... 20

*Asahi Metal Industry Co. v. Superior Court*,
480 U.S. 102 (1987) ...................................................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 15, 24

*Austad Co. v. Pennie & Edmonds*,
823 F.2d 223 (8th Cir. 1987)......................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 15, 28

*Boyle v. United States*,
556 U.S. 938 (2009) .................................................................................... 32

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006)....................................................................... 19

*Bridge Cap. Invs. II v. Small*,
144 F. App'x 762 (11th Cir. 2005)............................................................... 18

*Bruntjen v. Van Exel*,
506 F. Supp. 3d 673 (D. Minn. Dec. 11, 2020)............................................. 5

*Bukowski v. Juranek*,
  35 N.W.2d 427 (Minn. 1948) ...................................................................... 28

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................... 6

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................... 7

*CHS Inc. v. Farmers Propane Inc.*,
  397 F. Supp. 3d 1324 (D. Minn. 2019) ..................................................... 10

*Convergence Aviation, Ltd. v. United Techs. Corp.*,
  2012 WL 698391 (N.D. Ill. Feb. 29, 2012) ............................................... 11

*Crescendo Invs., Inc. v. Brice*,
  61 S.W.3d 465 (Tex. App. 2001) .............................................................. 26

*Crest Const. II, Inc. v. Doe*,
  660 F.3d 346 (8th Cir. 2011) ............................................................... 32, 33

*D.A.B. v. Brown*,
  570 N.W.2d 168 (Minn. Ct. App. 1997) ................................................... 28

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................... 7, 8

*Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*,
  89 F.3d 519 (8th Cir. 1996) ..................................................................... 11

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ................................................................... 16

*E–Shops Corp. v. U.S. Bank Nat'l Ass'n*,
  678 F.3d 659 (8th Cir. 2012) ................................................................... 25

*Epps v. Stewart Info. Servs. Corp.*,
  327 F.3d 642 (8th Cir. 2003) ................................................................. 5, 14

*Fastpath, Inc. v. Arbela Techs. Corp.*,
  760 F.3d 816 (8th Cir. 2014) ................................................................. 2, 5

*Feliciano-Munoz v. Rebarber-Ocasio*,
    2018 WL 8805486 (D.P.R. Sept. 28, 2018), *aff'd in part,*
    *vacated in part, remanded*, 970 F.3d 53 (1st Cir. 2020) ...................................... 18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ............................................................................................ 7

*Gometz v. Culwell*,
    850 F.2d 461 (8th Cir. 1988) ............................................................................. 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................................ 7

*Helleloid v. Indep. Sch. Dist. No. 361*,
    149 F. Supp. 2d 863 (D. Minn. 2001) .............................................................. 16

*In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2020 WL 919259 (D. Minn. Feb. 26, 2020), *aff'd*, 9 F.4th 793 (8th Cir. 2021).... 17

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................ 5

*Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co.*,
    872 F. Supp. 2d 838 (D. Minn. 2012) .............................................................. 12

*K & S P'ship v. Cont'l Bank, N.A.*,
    952 F.2d 971 (8th Cir. 1991) ............................................................................. 26

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
    648 F.3d 588 (8th Cir. 2011) ............................................................................... 6

*Lahti v. Countrywide Bank, FSB*,
    2012 WL 4815075 (D. Minn. Oct. 10, 2012) .................................................... 21

*Land—O—Nod v. Bassett Furniture Industries, Inc.*,
    708 F.2d 1338 (8th Cir. 1983) ............................................................................. 8

*Lawhead v. L. Offs. of Joseph Martin Carasso*,
    482 F. Supp. 3d 867 (D. Minn. 2020) .............................................................. 12

*M.G. Incentives, Inc. v. Marchand*,
    2001 WL 96223 (Minn. Ct. App. Feb. 6, 2001) ................................................ 10

*Mack v. Britto Cent., Inc.*,
　2014 WL 1608364 (D. Minn. Apr. 21, 2014) ........................................................ 6

*Marable v. City of Minneapolis*,
　2020 WL 2312940 (Minn. Ct. App. May 11, 2020) ............................................. 28

*Minnesota Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*,
　822 F. Supp. 2d 896 (D. Minn. 2011) ............................................................. 13, 19

*Nelson v. Nelson*,
　2015 WL 4136339 (D. Minn. July 8, 2015) ......................................................... 33

*Nelson v. Nelson*,
　833 F.3d 965 (8th Cir. 2016) ............................................................................... 32

*Nitro Distributing, Inc. v. Alticor, Inc.*,
　565 F.3d 417 (8th Cir. 2009) ............................................................................... 33

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*,
　851 F.3d 800 (8th Cir. 2017) ............................................................................... 20

*Paisley Park Enters., Inc. v. Boxill*,
　361 F. Supp. 3d 869 (D. Minn. 2019) ............................................................ 11, 14

*Peterson v. Wallace*,
　622 F. Supp. 2d 791 (D. Minn. 2008) .................................................................. 11

*Popp Telecom, Inc. v. Am. Sharecom, Inc.*,
　361 F.3d 482 (8th Cir. 2004) ............................................................................... 16

*Prestressed Concrete, Inc. v. Bladholm Bros. Culvert Co.*,
　498 N.W.2d 274 (Minn. Ct. App. 1993) .............................................................. 27

*Ransom v. VFS, Inc.*,
　918 F. Supp. 2d 888 (D. Minn. 2013) .................................................................. 17

*Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*,
　2021 WL 2686079 (D. Minn. June 30, 2021), *aff'd,* 48 F.4th 896
　(8th Cir. 2022) ..................................................................................................... 22

*Robert Allen Taylor Co.*,
　2016 WL 5640670 (Minn. Ct. App. Oct. 3, 2016) ............................................... 28

*Rosemann v. St. Louis Bank*,
  858 F.3d 488 (8th Cir. 2017) ............................................................. 30, 32

*Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*,
  992 F.3d 674 (8th Cir. 2021) .................................................................... 21

*Sebrite Agency, Inc. v. Platt*,
  884 F. Supp. 2d 912 (D. Minn. 2012)...................................................... 32

*Segelbaum v. MW Cap., LLC,*
  673 F. Supp.2d 875 (D. Minn. 2009) ...................................................... 28

*Sheehan v. S. Foods Grp., LLC*,
  2019 WL 5406040 (D. Haw. Oct. 22, 2019)............................................ 12

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
  605 U.S. 280 (2025) ................................................................................ 23

*Sorenson v. Sorenson*,
  2022 WL 329678 (D. Minn. Feb. 3, 2022), *aff'd*, 64 F.4th 969 (8th Cir. 2023).... 17

*Steinbuch v. Cutler*,
  518 F.3d 580 (8th Cir. 2008) ................................................................. 6, 8

*Stromberg v. Smith*,
  423 N.W.2d 107 (Minn. Ct. App. 1988) .................................................. 20

*Tatone v. SunTrust Mortg., Inc.*,
  857 F. Supp. 2d 821 (D. Minn. 2012) ................................................. 27, 28

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ............................................................................ 23, 25

*UMB Bank, N.A. v. Guerin*,
  89 F.4th 1047 (8th Cir. 2024) ................................................................. 32

*Vang v. PNC Mortgage, Inc.*,
  517 Fed. App'x. 523 (8th Cir. 2013) ....................................................... 15

*Varga v. U.S. Bank Nat. Ass'n*,
  952 F. Supp. 2d 850 (D. Minn. 2013), *aff'd,* 764 F.3d 833 (8th Cir. 2014)..... 23, 24

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................ 12

*Vuoncino v. Forterra, Inc.*,
   140 F.4th 200 (5th Cir. 2025) .............................................................................. 19

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................. 13

*Warmington v. Bd. of Regents of Univ. of Minnesota*,
   998 F.3d 789 (8th Cir. 2021) ............................................................................... 24

*Zayed v. Associated Bank, N.A.*,
   2017 WL 424855 (D. Minn. Jan. 31, 2017), *aff'd*, 913 F.3d 709
   (8th Cir. 2019) ............................................................................................... 24, 25

Rules

Fed. R. Civ. P. 9(b) ..................................................................... 16, 22, 27, 31, 32
Fed. R. Civ. P. 12(b)(2) ........................................................................................ 4, 5
Fed. R. Civ. P. 12(b)(6) ........................................................................................... 15

Other Authorities

Restatement (Second) of Contracts § 213 (1981) ............................................... 20
Restatement (Second) of Torts § 876 (1979) ....................................................... 24

## **INTRODUCTION**

Defendant Colliers International Group, Inc. ("International") does not belong in this lawsuit. Plaintiff Union Equipment Finance, LLC ("Plaintiff" or "Union") has applied a kitchen-sink approach and asserted multiple claims against multiple defendants relating to a financing transaction involving a nitril glove manufacturing facility. Despite the nearly 300-paragraph Complaint and lengthy exhibits, however, the few factual allegations asserted against International make clear that Plaintiff's claims against International fail as a matter of law. First, Plaintiff's allegations do not establish— because this Court does not have—personal jurisdiction over International. Second, Plaintiff's allegations do not establish—either plausibly or with particularity—claims against International upon which relief can be granted. As a result, International's Motion to Dismiss should be granted.

This Court does not have personal jurisdiction over International. International is a Canadian corporation headquartered in Toronto. As a result, International is not "at home" in Minnesota. Moreover, International does not own any property in Minnesota, does not lease any offices in Minnesota, and does not have any employees in Minnesota. Thus, the Court lacks specific jurisdiction, too, because International has not purposely directed any activities to Minnesota that relate to Plaintiff's claims. In short, Plaintiff's Complaint against International must be dismissed because the Court lacks personal jurisdiction over International.

International's Motion should also be granted because the four claims against International fail as a matter of law. Plaintiff's claim of fraud (Count I), aiding and

abetting (Count IX), civil conspiracy (Count X), and RICO conspiracy (Count XI) against International significantly overlap. Cutting through Plaintiff's barebones recitations of legal elements, Plaintiff's claims against International boil down to the other Defendants' alleged and limited use of International's logo and email server. That is, despite hundreds of allegations and pages of exhibits, Plaintiff claims that International somehow committed fraud, aided and abetted fraud, conspired to commit fraud, or engaged in racketeering simply because other Defendants allegedly used International's email server and logo a few times. Through these allegations, Plaintiff does not come close to plausibly alleging that employees of International made any misrepresentations to Plaintiff, that International substantially assisted or even knew about alleged misconduct, or that International actively conspired to defraud Plaintiff. The claims fail as a matter of law.

Because this Court does not have personal jurisdiction over International and because the claims fail to state a claim upon which relief can be granted against International, all claims against International must be dismissed.

## BACKGROUND

### I.    International is a Canadian corporation headquartered in Toronto.

International is a Canadian corporation, headquartered in Toronto. (Dkt. No. 14 at ¶ 4.)[1] International does not own any property in Minnesota. (*Id.* ¶ 5.) International does

---

[1] For this background, International is relying on the allegations in Plaintiff's Complaint and the Declaration of Ryan Fleming, dated March 13, 2026. (Dkt. No. 14.) The Court is allowed to consider this Declaration as it relates to personal jurisdiction. *See Fastpath,*

not have any employees working in Minnesota. (*Id*.) International is not registered to do business in Minnesota. (*Id.*) And International does not lease any offices in Minnesota. (*Id.*)

International does own various subsidiaries that do business in Minnesota. In 2020, International indirectly acquired, among other entities, Dougherty Funding LLC, Dougherty & Company LLC, and Dougherty Mortgage LLC. (Compl. ¶ 29.) These entities became Colliers Funding LLC, Colliers Securities LLC, and Colliers Mortgage LLC, respectively. (*Id.* ¶ 30.) International does not directly own Colliers Equipment Trustee LLC, Colliers Funding LLC, or Colliers Securities LLC. (Dkt. No. 14 at ¶ 6.)

## II.     Other Colliers entities pursue the Rhino Transaction.

Plaintiffs allege other Colliers entity Defendants began pursuing the "Rhino Transaction" in late 2022. (Compl. ¶ 36.) The Rhino Transaction was a financing deal for a nitril glove manufacturing facility in Texas. (*Id.*) Plaintiff is a community bank that was offered the opportunity to participate in the transaction.

In or around November 2022, Colliers Funding prepared a Term Sheet outlining the proposed transaction. (Compl. ¶¶ 51, 54.) International did not prepare the Term Sheet, nor was International listed as a party to the transaction in the Term Sheet itself. (*Id.*; *see also* Compl. Ex. 4.) Equally as important, International did not send the Term Sheet to Plaintiff either. (Compl. ¶ 52.) Although International was not involved in the transaction at all, its logo appears on the Term Sheet. (Compl. Ex. 4.) But while

---

*Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). For the avoidance of doubt, International denies many of the allegations in the Complaint.

3

International's logo was used on the Term Sheet, it was not subsequently used on any of the multiple transaction documents executed after the Term Sheet. (Compl. Exs. 5, 10, 11, 12, 13, 14.) Finally, Plaintiff also alleges that emails relating to the transaction were sent by other entities on International's email server, but that is not accurate. (*See* Compl. ¶¶ 52, 54; *see also* Dkt. No. 14 at ¶ 8.)

**III.     Plaintiff sues all of the Colliers entities, including International.**

In January 2026, Plaintiff commenced this lawsuit against the other Colliers Defendants, Avalanche, and International. (*See generally* Compl.) Plaintiff asserts four counts against International: Count I (fraud), Count IX (aiding and abetting), Count X (civil conspiracy), and Count XI (RICO).

International removed the lawsuit to this Court and is now moving to dismiss the claims against it because this Court does not have personal jurisdiction over International and the claims fail to state a claim against International upon which relief can be granted. International respectfully requests that the Court grant its Motion.

## ARGUMENT

**I.     The Complaint Should Be Dismissed Against International for Lack of Personal Jurisdiction.**

The Complaint should be dismissed against International because this Court does not have personal jurisdiction over International. *See* Fed. R. Civ. P. 12(b)(2) (allowing a defendant to move to dismiss for "lack of personal jurisdiction.").

"The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."

*Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "While the facts adduced in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction." *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977).

The analysis for determining personal jurisdiction normally consists of two prongs relating to a forum's long-arm statute and due process, but since "Minnesota has construed its long-arm statute to have the maximum extraterritorial effect allowed under the due process clause[,]" the "inquiry collapses into a single question of whether the exercise of personal jurisdiction comports with due process[.]" *Bruntjen v. Van Exel*, 506 F. Supp. 3d 673, 680 (D. Minn. Dec. 11, 2020).

For purposes of due process, "[i]n order to constitutionally assert personal jurisdiction over a non-resident defendant, 'traditional notions of fair play and substantial justice' must not be offended." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). "The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether

the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09 (1987). Such minimum contacts require that the defendant take action that is *purposefully directed toward the forum state*. *Id.* at 112. "The defendant must have engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "This purposeful-availment requirement is met where the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King*, 471 U.S. at 474).

Federal courts have recognized two bases for establishing personal jurisdiction through purposeful-availment: general personal jurisdiction or specific personal jurisdiction. *See Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) ("The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction."). If plaintiff cannot establish either, then the Court lacks personal jurisdiction, and the complaint must be dismissed. *See Mack v. Britto Cent., Inc.*, 2014 WL 1608364, at *5 (D. Minn. Apr. 21, 2014) ("Because Plaintiff cannot establish that this Court can properly exercise either specific or general personal jurisdiction over

6

Defendants, this case must be dismissed."). Here, Plaintiff is unable to establish either general or specific jurisdiction over International.[2]

### A. This Court does not have general personal jurisdiction over International.

Plaintiff cannot establish—because this Court does not have—general personal jurisdiction over International. A court has general jurisdiction over a corporation when "that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted))). Corporations are "at home" in the forum in which they are incorporated and have their principal place of business. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021) ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." (citing *Daimler AG*, 571 U.S. at 137) (internal citations omitted)).

International is not "at home" in Minnesota. International is incorporated in Canada. (Dkt. No. 14 at ¶ 4.) And International's principal place of business is in Toronto, Canada. (*Id.*) Relatedly, International is not registered to do business in

---

[2] Even if Plaintiff can establish personal jurisdiction over the other defendants, the Court must still dismiss the Complaint against International because "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Minnesota. (*Id.* ¶ 5.) As a result, International has not consented to jurisdiction in Minnesota and is not subject to general personal jurisdiction in Minnesota. *See, e.g.*, *Daimler AG*, 571 U.S. at 139 (finding no general personal jurisdiction because the corporation was not incorporated in the forum state nor was its principal place of business in the forum state).

> **B.      This Court does not have specific personal jurisdiction over International.**

Similar to general personal jurisdiction, Plaintiff cannot establish—because this Court does not have—specific personal jurisdiction over International. Specific personal jurisdiction "is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch*, 518 F.3d at 586.

The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land—O—Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. As described more recently, however, "[t]he five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants contacts with the forum State establish minimum contacts; (2) whether the

litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state." *Ahlgren v. Muller*, 438 F. Supp. 3d 981, 987 (D. Minn. 2020).

None of these factors support finding sufficient contacts and thus these factors, in aggregate, cannot establish specific personal jurisdiction over International.

### 1.      The quality and quantity of International's contacts with Minnesota do not support personal jurisdiction.

The quality and quantity of International's contacts with Minnesota do not support personal jurisdiction because International has not had any direct contact with Minnesota. As mentioned above, International is not incorporated in Minnesota, nor is its principal place of business in Minnesota. International does not own any property in Minnesota. (Dkt. No. 14 at ¶ 5.) International does not lease any offices in Minnesota. (*Id.*) International does not have any employees based in Minnesota. (*Id.*) In fact, the Complaint does not contain a single allegation describing any action taken by an employee of International, let alone some action that has a tie to Minnesota and the financing transaction at issue. (*See generally* Compl.)

Plaintiff relies on indirect contacts instead. But even those are scarce. The only indirect contacts that Plaintiff alleges relating to International and the transaction at issue involve the alleged use of International's email servers and letterhead utilizing International's emblem. (*See generally* Compl.) Neither of these alleged indirect contacts are sufficient to establish personal jurisdiction in Minnesota.

9

As a preliminary matter, Plaintiff's allegations relating to International's email server are not accurate. Colliers Equipment Trustee LLC, Colliers Funding LLC, and Colliers Securities LLC have their own email exchange server. (Dkt. No. 14 at ¶ 8.)

Even still, as for the email servers, courts routinely reject claims that email establishes personal jurisdiction. Email alone cannot possibly establish jurisdiction because neither the location of where emails are sent nor received establishes legitimate contact with one forum. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014) ("As a practical matter, email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and it winds up wherever the recipient happens to be at that instant. The connection between the place where an email is opened and a lawsuit is entirely fortuitous."). As the Minnesota Court of Appeals put it, "[t]o conclude that email contacts alone might establish personal jurisdiction would potentially subject the sender to jurisdiction in any state in which the recipient reviews a message." *M.G. Incentives, Inc. v. Marchand*, 2001 WL 96223, at *3 (Minn. Ct. App. Feb. 6, 2001). Of course, such a result flies in face of due process, which underlies the jurisdictional analysis. This is especially true when no other material contacts with the forum jurisdiction exist. *See CHS Inc. v. Farmers Propane Inc.*, 397 F. Supp. 3d 1324, 1330 (D. Minn. 2019) ("Daily emails and phone calls to individuals in the forum state lack sufficient quality to establish personal jurisdiction, particularly when the defendant is not authorized to do business in the forum state, does not have any offices in the forum state, and owns no property there."); *see also*

10

*Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 877 (D. Minn. 2019) ("[E]ven 100 phone calls will not establish jurisdiction if a defendant has no offices, employees, inventory, real estate, or bank accounts in the forum state.").

Plaintiff's allegations relating to International's logo similarly fall short of establishing personal jurisdiction. Courts routinely find that a defendant sending letters to a jurisdiction—which Plaintiff does not even allege International did here—is not enough to establish personal jurisdiction. *See, e.g.*, *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction."); *Peterson v. Wallace*, 622 F. Supp. 2d 791, 798 (D. Minn. 2008) ("Generally, sending letters into or making telephone calls to a forum state is insufficient, by itself, to satisfy due process and confer jurisdiction.").

International's alleged contacts with Minnesota are at least twice removed from conduct (sending documents) that courts have found to be insufficient for purposes of establishing personal jurisdiction. First, Plaintiff claims that other defendants (not International) sent documents containing International's logo to Union—in Nebraska— and claim that this somehow supports subjecting International to personal jurisdiction in Minnesota. (Compl. at ¶ 34 ("Funding began sending offerings to Union and other community banks on International letterhead.").) That is not the law. The use of a logo does not establish personal jurisdiction. *See Convergence Aviation, Ltd. v. United Techs. Corp.*, 2012 WL 698391, at *6 (N.D. Ill. Feb. 29, 2012) ("[T]he use of a logo on letterhead, as we have already addressed, is not jurisdiction-conferring conduct."); *see,*

11

*e.g.*, *Sheehan v. S. Foods Grp., LLC*, 2019 WL 5406040, at \*3 (D. Haw. Oct. 22, 2019) ("The logo alone does not establish a basis for general jurisdiction."); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1301 (S.D. Cal. 2003) (finding use of common trade name does not confer personal jurisdiction over corporation).

Furthermore, Plaintiff alleges that the documents sent to Plaintiff—a Nebraska company that operates in Nebraska—establish personal jurisdiction in Minnesota. Again, this is not the law. For purposes of personal jurisdiction, it is the contacts with the forum that matter, not contacts with the Plaintiff. *See Lawhead v. L. Offs. of Joseph Martin Carasso*, 482 F. Supp. 3d 867, 872 (D. Minn. 2020) ("The plaintiff may not be the only link between the Defendant and the forum state; the Defendant must have themselves purposefully directed activity at the forum state itself.").

In the end, International has not had the quality or quantity of contacts with Minnesota to subject it to jurisdiction here. International did not aim any conduct at Minnesota or intend to induce any activity in Minnesota, and Minnesota was not the focal point of the alleged wrongdoing in Plaintiff's case. *See Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co.*, 872 F. Supp. 2d 838, 847 (D. Minn. 2012) (finding no personal jurisdiction because Plaintiff could not prove that defendant "aimed its conduct at Minnesota, that [defendant] intended to induce commercial activity in Minnesota, or that Minnesota was somehow the focal point of the alleged wrongdoing."). As a result, there is no basis to find personal jurisdiction over International here.

### 2.      Plaintiff's cause of action does not arise out of International's contacts with Minnesota.

Plaintiff's cause of action does not support subjecting International to personal jurisdiction here either. As it relates to its cause of action, the allegations show that these claims do not arise out of International's contacts (if any) with Minnesota. Plaintiff's allegations also demonstrate that the other Defendants' contacts with Minnesota cannot be imputed to International. Thus, Plaintiff fails to establish personal jurisdiction over International.

As it relates to this cause of action, Plaintiff is only suing the other Colliers entities in Minnesota because the transaction documents Plaintiff signed with those entities include a Minnesota forum-selection clause. (Compl. ¶ 25.) But International is not subject to personal jurisdiction in Minnesota just because the other Colliers entities are. And International is not subject to a forum-selection clause just because the other Colliers entities are. *See Minnesota Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 904 (D. Minn. 2011) ("Thus, the forum-selection clause in a contract between the subsidiary and another generally does not also bind the parent in any dispute with the other party.").

Separate from its cause of action, there is no basis to impute contacts to International. Generally, a plaintiff cannot establish personal jurisdiction over one defendant based on the contacts with the forum-state by the plaintiff or other parties. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts

13

between the plaintiff (or third parties) and the forum State."); *see also Paisley Park Enters.,*361 F. Supp. 3d at 877 ("[A] defendant's communication with an out-of-state third party, who in turn has contacts with the forum state, is a contact with the forum state that is too tenuous to satisfy the first factor."). The same general rule applies to corporate parents and subsidiaries. A parent company is subject to jurisdiction as a result of a subsidiary's conduct "only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 649.

To be clear, Plaintiff does not allege that the other Colliers entities are the alter ego of International. (*See generally* Compl.) Even still, the allegations do not support such a claim either. None of the other Colliers Defendants are even direct subsidiaries of International. (Dkt. No. 14 at ¶ 6.) Nor is this a small business in which the officers and directors of the parent company are the same as the subsidiary. (*Id.* ¶ 7.) At bottom, in addition to there being no basis to find personal jurisdiction over International for its own contacts with Minnesota, there is no basis to find personal jurisdiction over International based on the other Colliers entities' contacts either.

Because the quality and quantity of International's contacts with Minnesota do not support personal jurisdiction and because Plaintiff's claim does not arise out of International's contacts, if any, with Minnesota, there is no basis to subject International to personal jurisdiction in Minnesota. And because Plaintiff cannot meet these first elements, the Court need not analyze Minnesota's interest or the convenience of the

parties. *See Ahlgren*, 438 F. Supp. 3d at 987 (D. Minn. 2020) (holding that the interest of the forum statement and convenience of the parties are only considered if the first two elements are met). The Complaint should be dismissed on this basis alone.

## II.   All of Plaintiff's Claims Against International Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.

The Complaint should be dismissed against International because the Complaint fails to state a claim upon which relief can be granted against International. *See* Fed. R. Civ. P. 12(b)(6) (allowing a defendant to move to dismiss for "failure to state a claim upon which relief can be granted.")

In reviewing a motion to dismiss, the Court must accept as true all factual allegations in the complaint, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Vang v. PNC Mortgage, Inc.*, 517 Fed. App'x. 523, 525 (8th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). A complaint cannot simply

15

leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 561.

Here, the Court should dismiss all claims against International for failure to state a claim: Count I (fraud), Count IX (aiding and abetting), Count X (civil conspiracy), and Count XI (RICO).

### A.      The Court should dismiss Count I (Fraud) against International.

The Court should dismiss Count I (fraud) against International because the Complaint does not state a legally sufficient fraud claim against International. "In order to maintain a common law fraud claim under Minnesota law, a plaintiff must prove: (1) a false representation of material fact that is susceptible of knowledge; (2) made with knowledge that it is false or asserted as if it is based on the person's own knowledge without knowing whether it is true or false; (3) made with the intent to induce another to act in reliance on the representation; and (4) causing the other party to act in reliance to its detriment." *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "'Particularity,' as the term is employed in Rule 9(b), 'means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Helleloid v. Indep. Sch. Dist. No. 361*, 149 F. Supp. 2d 863, 878 (D. Minn. 2001) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

16

### 1. Plaintiff does not plead that International made any fraudulent statements to Plaintiff.

Plaintiff's fraud claim fails as a matter of law because Plaintiff does not plead that International made any representations at all, let alone to Plaintiff. The "who", "what", and "how" aspects of the fraud claim against International are missing entirely.

The centerpiece of a fraud claim is a specific statement made by a specific defendant. If a plaintiff fails to allege any fraudulent statements attributable to a specific defendant, then the fraud claim fails as a matter of law. *See Sorenson v. Sorenson*, 2022 WL 329678, at *6 (D. Minn. Feb. 3, 2022), *aff'd*, 64 F.4th 969 (8th Cir. 2023) ("The FAC alleges no actionable misrepresentation by Defendant. Because Plaintiffs admit that there were no false or other representations made by Defendant, no fraudulent misrepresentation claim can survive."); *In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2020 WL 919259, at *8 (D. Minn. Feb. 26, 2020), *aff'd*, 9 F.4th 793 (8th Cir. 2021) ("Plaintiff Luna's fraud claims do not identify any actionable statement or omission attributable to Defendants. As such, Luna fails to plead his fraud claims with particularity, as required."); *see also Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 899 (D. Minn. 2013) (dismissing fraud claims because plaintiff failed to identify who made representations).

Here, Plaintiff does not allege that International made any fraudulent statements. Although Plaintiff identifies a few allegedly fraudulent statements for Count I, they all stem from the Term Sheet. (*See* Compl. ¶ 209.) This is the pitfall in Plaintiff's fraud claim against International – International is not a party to the Term Sheet and did not

17

convey the Term Sheet to Plaintiff. (*See* Compl. Ex. 4.) Plaintiff admits as much in the

Complaint. Indeed, Plaintiff admits that International did not prepare the Term Sheet.

(*See* Compl. ¶ 54 ("The Term Sheet was prepared by Funding, with input from Securities

and Avalanche.").) Plaintiff admits that International did not share the Term Sheet with

Plaintiff. (*See id.* ¶ 52 ("Union received the Term Sheet from Weingart, an employee of

Funding, on November 13, 2022. . . .").) And although Plaintiff points to International's

emblem on the Term Sheet, the document itself shows that International is not a party to

the Term Sheet, nor a party to the proposed transaction. (*See* Compl. Ex. 4 at 9 (listing

parties (which do not include International)).)[3]

If International is not a party to the Term Sheet and did not disseminate the Term

Sheet to anyone let alone Plaintiff, then International cannot be liable for any allegedly

fraudulent statements contained within the Term Sheet. *See Feliciano-Munoz v.*

*Rebarber-Ocasio*, 2018 WL 8805486, at *8 (D.P.R. Sept. 28, 2018), *aff'd in part,*

*vacated in part, remanded*, 970 F.3d 53 (1st Cir. 2020) ("It follows that Defendant could

not have made false representations to Air America, Inc. during the formation of the

contract between him and Mr. Feliciano-Muñoz because Air America, Inc. was not a

party to the contract."); *Bridge Cap. Invs. II v. Small*, 144 F. App'x 762, 763 (11th Cir.

---

[3] Plaintiff alleges that the Term Sheet "intentionally obscures each of the Colliers Parties' roles in the transaction . . . ." (Compl. ¶ 57.) However, there is only one Colliers entity that is a party to the Term Sheet—Colliers Funding LLC. (*See* Compl. Ex. 4 at 1 ("Colliers Funding LLC has secured the opportunity . . . ."); *id.* at 9 (listing parties to the transaction (which do not include International).)

2005) ("Susquehanna was not a party to the 1990 Small Agreement-and thus cannot possibly have induced Small to enter into it . . . .").

Because Plaintiff does not allege that International made any fraudulent statements, let alone any fraudulent statements to Plaintiff, Plaintiff attempts to hook International for alleged statements made by other Colliers entities. This claim ignores fundamental corporate law. Regardless of any parent/subsidiary relationship, International is a separate legal entity from the other Colliers entities, and International is not liable for their alleged conduct. *See Minnesota Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 904 (D. Minn. 2011) ("A corporate parent is a separate legal entity from any subsidiaries, even if they are wholly-owned by the parent."); *see also Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 211 (5th Cir. 2025) ("That parent corporations are not liable for the conduct of their subsidiaries is a 'bedrock principle of corporate law.'" (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006))).

In the end, because Plaintiff has not pleaded, with particularity, "who", "what", and "how" with regards to International, the fraud claim fails against International. Simply put, International could not have committed fraud if it never made *any* representations to Plaintiff.

### 2.    Plaintiff does not plausibly allege reliance on International.

Plaintiff's fraud claim against International should also be dismissed because Plaintiff admits that it did not rely on International's alleged involvement either. "Parties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim

19

of justifiable reliance.'" *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949

F.3d 417, 423 (8th Cir. 2020) (quoting *OmegaGenesis Corp. v. Mayo Found. for Med.*

*Educ. & Research*, 851 F.3d 800, 805 (8th Cir. 2017)).

Again, International's alleged involvement does not qualify as a fraudulent

statement, but even so Plaintiff admits that it did not rely on International's involvement

anyway. In the Complaint, Plaintiff merely alleges that it relied on the three alleged

misrepresentations within the Term Sheet to move forward with the transaction. (*See*

Compl. ¶ 59.) None of those alleged misrepresentations had anything to do with

International or its perceived involvement in the transaction. (*Id.*) Tellingly, although

Plaintiff alleges that it would not have participated in the transactions had it known about

the alleged fees, it does not allege that it would not have participated had it known that

International was not involved. (*Id.* ¶ 66.)

In fact, Plaintiff doubles down and alleges that the misrepresentations that it relied

on were not contradicted by the subsequent Participation Agreement or Trust

Agreement.[4] (*See id.* ¶ 60.) While Plaintiff does this to support its claim that it was

induced to rely on the misrepresentations and reasonably did so, this allegation only

---

[4] The Participation includes an integration clause, which provides in part: "This Participation Agreement, the Participant's Certificate of Participation, and the Investment Trustee Documents shall contain the entire understanding of the parties hereto in respect to the transaction contemplated hereby and supersedes all prior agreements and understandings between the parties with respect to such subject matter." (Compl. Ex. 11 at § 10.12.) This Agreement therefore supersedes the Term Sheet altogether anyway. *See Stromberg v. Smith*, 423 N.W.2d 107, 109 (Minn. Ct. App. 1988) ("[I]f a contract is a complete integration of the parties' agreements, prior agreements within the scope of the contract are discharged regardless of consistency." (citing Restatement (Second) of Contracts § 213 (1981))).

highlights why the fraud claim against International must fail. Not only was International not a party to the subsequent agreements that Plaintiff points to, but International's logo was not utilized in those agreements either. (*See* Compl. Exs. 5, 10.) In other words, rather than plead with particularity how it was induced to rely on International's involvement, Plaintiff admits the opposite. As a result, Plaintiff's claim fails as a matter of law. *See Lahti v. Countrywide Bank, FSB*, 2012 WL 4815075, at *4 (D. Minn. Oct. 10, 2012) ("[B]oth fraud claims fail because [plaintiff] cannot demonstrate she relied on any statements by either Defendant.").

In sum, Plaintiff does not plausibly or with particularity allege that International made any misrepresentations to Plaintiff or that Plaintiff relied on any misrepresentations that International made (nor did it rely on International's involvement, which is not a fraudulent statement). As a result, Plaintiff's fraud claim against International fails as a matter of law and needs to be dismissed.

### B.    The Court should dismiss Count IX (Aiding and Abetting) against International.

The Court should dismiss Count IX against International because Plaintiff fails to plead aiding and abetting as a matter of law. "Under Minnesota law, to establish a claim for aiding and abetting, the plaintiff must show: (1) the primary tortfeasor committed a tort that injured the plaintiff; (2) the defendant knew that the primary tortfeasor's conduct was a breach of duty; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in that breach." *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 992 F.3d 674, 680–81 (8th Cir. 2021). Similar to the fraud claim above, to survive a motion to

21

dismiss, Plaintiff's aiding and abetting must meet Rule 9(b)'s heightened pleading standard. *See Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 2021 WL 2686079, at *4 (D. Minn. June 30, 2021), *aff'd,* 48 F.4th 896 (8th Cir. 2022) ("Aiding and abetting fraud claims must meet Rule 9(b)'s heightened pleading standards.").

### 1.     The aiding and abetting claim does not satisfy Rule 9(b).

Here, the claim fails because Plaintiff does not plead, let alone with particularity, any of the elements of aiding and abetting. In fact, Plaintiff's aiding and abetting count only has two meaningful paragraphs. One alleges that "[a]s set forth in Counts I, II, III, V, VII, and VIII, Defendants have committed torts that caused injury to Union." (Compl. ¶ 266.) The other paragraph alleges that "[e]ach Defendant was aided and abetted in committing such torts by the remaining Defendants, knew that the conduct constituted a tort and provided substantial assistance and/or encouragement." (Compl. ¶ 267.) This shotgun approach, supported only by bare conclusions, falls well short of Plaintiff's pleading obligations.

As it relates to International, Plaintiff's bare-bones allegations are even worse. In purely conclusory fashion, Plaintiff alleges that International aided and abetted every other Defendant on six different torts. (Compl. ¶ 266.) One of those torts is the fraud claim also pleaded against International, which was addressed above. Importantly, for the other five torts, however, International is not mentioned once in Plaintiff's corresponding allegations. (*See generally* Compl.) As just one example, Plaintiff alleges that

22

International aided and abetted Count II (Fraud – Update #6). But International is not mentioned in any of Plaintiff's allegations supporting Count II. Not once.

Plaintiff's extremely vague and conclusory allegations are reasons alone to dismiss the aiding and abetting claim against International. As addressed below, however, even giving Plaintiff the benefit of the doubt does not save the claim.

> **2.    The aiding and abetting claim should be dismissed because the Complaint does not plausibly allege that International knew about or substantially assisted or encouraged any alleged tort.**

The aiding and abetting claim fails as a matter of law because the Complaint does not plausibly allege that International even knew about alleged wrongdoing with respect to the Rhino transaction and certainly does not allege that International substantially assisted or encouraged any alleged tort. As the Supreme Court stated, "[t]he point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023); *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292, (2025) ("[A]iding and abetting usually requires misfeasance rather than nonfeasance. Absent an 'independent duty to act,' a person's 'failure[s],' 'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." (quoting *Twitter*, 598 U.S. at 489)).

Substantial assistance requires an affirmative step that was a substantial factor in the alleged wrongdoing. *See Varga v. U.S. Bank Nat. Ass'n*, 952 F. Supp. 2d 850, 859 (D. Minn. 2013), *aff'd,* 764 F.3d 833 (8th Cir. 2014) ("Substantial assistance requires an 'affirmative step' on the part of the aider-and-abettor . . . that is a 'substantial factor' in

23

causing the [alleged tort].") (internal citations omitted). To determine whether a defendant substantially assisted an alleged tort, courts consider "the nature of the act encouraged, the amount of assistance given, the aider-and-abettor's presence or absence at the time of the tort, its relation to the primary actor, and its state of mind." *Varga*, 952 F. Supp. 2d at 859; *see also* Restatement (Second) of Torts § 876 (1979) (detailing five factors for substantial assistance). "The elements of knowledge and substantial assistance are analyzed in tandem." *Zayed v. Associated Bank, N.A.*, 2017 WL 424855, at *2 (D. Minn. Jan. 31, 2017), *aff'd*, 913 F.3d 709 (8th Cir. 2019).

The Complaint does not come close to plausibly alleging—with particularity— substantial assistance. Again, the only allegation relating to substantial assistance is the bare conclusion that "Defendants . . knew that the conduct constituted a tort and provided substantial assistance and/or encouragement." (Compl. ¶ 267.) That's it. This Court is not bound by Plaintiff's legal conclusion regarding substantial assistance. *See Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) ("The court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)).

Setting aside Plaintiff's legal conclusion and parsing through Plaintiff's other allegations highlights that Plaintiff has not pleaded any of the factors to establish a plausible claim that International substantially assisted anything.

As addressed above, International's alleged involvement boils down to limited use of its logo and email servers by other Defendants. This is not substantial assistance as a matter of law. *See Varga,* 952 F. Supp. 2d at 859 ("It is not enough for an aider-and-

24

abettor to act in some way that incidentally advances the breach."); *see also Twitter,* 598 U.S. at 499 ("[W]e generally do not think that internet or cell service providers incur culpability merely for providing their services to the public writ large. Nor do we think that such providers would normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—even if the provider's conference-call or video-call features made the sale easier.").

Importantly, although Plaintiff focuses on the use of International's logo and email servers, Plaintiff does not allege how either qualify as International taking an affirmative step that substantially assisted the alleged fraud. That is, Plaintiff does not allege— because it would be nonsensical—that International's email servers were critical to facilitating the alleged fraud. (*See generally* Compl.) To the contrary, Plaintiff acknowledges that the Term Sheet was also disseminated through other means not involving International's email servers at all. (Compl. ¶ 51 ("This Term Sheet was also uploaded to the due diligence electronic folder site to which each prospective participant was given access.").) Similarly, Plaintiff does not allege that International's logo somehow substantially assisted the alleged fraud. In fact, as addressed above, Plaintiff does not even allege that it relied on International's logo at all. (*Supra* p. 19-21.)

In addition to International not substantially assisting anything, Plaintiff does not plead with particularity or plausibility that International knew that the other defendants allegedly intended to harm Plaintiff. "An aider and abettor's knowledge of the wrongful purpose is a crucial element in aiding or abetting cases." *Zayed*, 2017 WL 424855, at *3 (quoting *E–Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012)).

As for knowledge, Plaintiff merely alleges that after International acquired Dougherty related entities in 2020, International allowed the other Colliers entities to use International's branding. (*See, e.g.*, Compl. ¶ 28 ("International also has acquired entities use International's letterhead and branding for offerings, as part of its intentional effort to give the appearance of legitimacy and additional resources to smaller entities without actually taking any steps to improve their business or to exert oversight.").) Again, this does not establish substantial assistance. *See K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991) (dismissing aiding and abetting claim and holding that plaintiff was not "entitled to rely on [defendant's] participation in production loans as representations on which to base their investment decisions in the light of the knowledge plaintiffs had at the time they made their investments."); *Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 473 (Tex. App. 2001) (finding no substantial assistance by an alleged aider and abettor despite the use of the defendant's reputation). Plaintiff does not allege that International allowed other entities to use its branding or email servers for the purpose of facilitating tortious conduct against Plaintiff with respect to the Rhino Transaction. (*See generally* Compl.) That is, Plaintiff does not allege that International knew about the allegedly fraudulent scheme against Plaintiff and allowed the other Defendants to use its branding because it knew that its branding would assist the other entities with the allegedly fraudulent scheme. (*Id.*) Likewise, Plaintiff does not allege that International allowed the other entities to use its email server because it knew that the other entities were sending fraudulent statements to Plaintiff and that the email server would enable them to do so. (*Id.*)

In sum, Plaintiff's aiding and abetting allegations are wholly inadequate under any pleading standard, and certainly a heightened pleading standard under Rule 9(b). Plaintiff does not allege that International substantially assisted any tort or that International provided assistance with the knowledge of the alleged wrongdoing and the intent to assist the alleged wrongdoing. Plaintiff's claim fails as a matter of law and needs to be dismissed.

### C.   The Court should dismiss Count X (Civil Conspiracy) against International.

Plaintiff's claim for civil conspiracy suffers from the same deficiencies as the aiding and abetting claim. Plaintiff does not allege with sufficient particularity that International had a meeting of the minds with any other Defendants to defraud Plaintiff in the Rhino transaction, nor does Plaintiff allege that International committed an overt act to defraud Plaintiff in the Rhino transaction.

To properly plead civil conspiracy, Plaintiff must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose. *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 838 (D. Minn. 2012). The elements of a conspiracy are: a concerted action, a specific intent to achieve an unlawful purpose, and commission of an overt act in furtherance of the conspiracy. *Prestressed Concrete, Inc. v. Bladholm Bros. Culvert Co.,* 498 N.W.2d 274, 277 (Minn. Ct. App. 1993). Furthermore, "a plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties

27

reached some agreement and conspired together" to injure the plaintiff. *Tatone,* 857 F. Supp. 2d at 839 (citing *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988)).

The "alleged conspirators must have a meeting of the minds regarding 'a plan or purpose of action to achieve the contemplated result.'" *Marable v. City of Minneapolis*, 2020 WL 2312940, at *10 (Minn. Ct. App. May 11, 2020) (quoting *Bukowski v. Juranek*, 35 N.W.2d 427, 429 (Minn. 1948)). It is not sufficient for a plaintiff to cut and paste the elements of a cause of action into a complaint and then expect the claim to survive a motion to dismiss. *See Segelbaum v. MW Cap., LLC,* 673 F. Supp.2d 875, 880 (D. Minn. 2009) ("A plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy.") (citing *Twombly,* 550 U.S. at 555).

With respect to the civil conspiracy claim (Count X), Plaintiff's allegations are little more than cut and paste of the elements. (*See* Compl. ¶¶ 269-272.) Plaintiff lumps all Defendants together, alleging "Defendants worked together to accomplish their agreed and shared objective…through the torts described above…" (Compl. ¶¶ 269-270.) Plaintiff does not differentiate between any of the Defendants and does not identify the underlying torts[5] giving rise to the alleged conspiracy. Plaintiff fails to allege the conspiracy with sufficient particularity.

---

[5] A civil conspiracy claim must be based on an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997); *Robert Allen Taylor Co.*, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016). Plaintiff's vague reference to "torts described above" that forms the basis of Plaintiff's civil conspiracy claim highlights the criticized kitchen sink approach taken by Plaintiff.

More importantly, there is no allegation beyond a conclusory incantation, let alone an alleged agreement with sufficient particularity, that any employee or representative of International had a meeting of the minds with any other Defendants to defraud Plaintiff of anything. Indeed, there is no mention of any employees of International in the Complaint.

Similarly, the Complaint is devoid of any allegation that International committed an overt act to defraud Plaintiff in the Rhino Transaction. More broadly, Plaintiff alleges that International indirectly acquired a controlling interest in various Dougherty related entities, changed the names to Colliers related entities, and then encouraged those entities to use International's logo and other branding. (Compl. ¶¶ 28-31.) Even if true, allegations regarding an acquisition that took place in 2020 do not demonstrate that International conspired with any other Defendants to specifically injure Plaintiff in the Rhino transaction in 2022-2023.

The only specific allegations regarding International's alleged involvement in the Rhino transaction relate to other Defendants' use of International's logo and email servers. (*See e.g.*, Compl ¶¶ 52, 55.) However, those allegations do not show that International committed an overt act. If anything, those allegations show actions taken by employees of other Defendants, not International. Plaintiff cannot vaguely refer to "Defendants," rope International into that definition, and argue that constitutes a concerted act by International to further a conspiracy. Because Plaintiff failed to allege that International committed an overt act with respect to the Rhino transaction to defraud or injure Plaintiff, the civil conspiracy claim fails to state a claim against International.

29

**D.**      **The Court should dismiss Count XI (RICO) against International.**

For Count XI, Plaintiff asserts yet another conspiracy claim against International under the guise of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). While Plaintiff alleges Funding and Securities committed substantive RICO violations under 18 U.S.C. § 1962(c), Plaintiff alleges that International (and Avalanche) conspired with Funding and Securities under 18 U.S.C. § 1962(d). Plaintiff's claim should be dismissed because both the conspiracy and underlying substantive RICO violations fail to state a claim.

**1.**      **Plaintiff fails to allege International objectively manifested an agreement to participate in the alleged RICO conspiracy.**

To establish a valid RICO conspiracy claim, Plaintiff must allege International "objectively manifested an agreement to participate … in the affairs of [the] enterprise." *Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017) (quoting *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017)). Plaintiff must allege International was (1) aware of the scope of the enterprise and (2) intended to participate in the enterprise. *Id.*

It is not enough for Plaintiff to allege that International merely associated with Funding and Securities, that International knew about the conspiracy, and International was present during conspiratorial discussions. *See id.* But Plaintiff's Complaint does not even do that. Beyond barebones legal conclusions, Plaintiff does not allege that International participated in any conspiratorial discussions regarding the Rhino or H2

30

transactions, let alone that International knew about the alleged conspiracy with respect to the Rhino Transaction and the H2 Transaction. (*See* Compl. ¶¶ 282, 291-92.)

There is only one allegation in Count XI that goes beyond a threadbare recitation of elements: "International agreed to use of its letterhead and branding in the fraudulent marketing of transactions by Funding and Securities. International also agree [sic] (and potentially required) Funding and Securities to conduct these acts through International's email server."  (Compl. ¶ 293.) Again, Plaintiff's entire claim against International relates back to the general use of International's logo and email server stemming from the 2020 acquisition of Dougherty entities. The fatal flaw that Plaintiff repeatedly makes is that Plaintiff does not and cannot allege that International specifically conspired with the other Defendants to injure Plaintiff. To the contrary, Plaintiff repeatedly alleges that International bought the Dougherty entities, rebranded those into Colliers entities, and then required the Colliers entities to use Colliers branding on all transactions. From there, Plaintiff asks the Court to infer International's alleged requirement to use branding and an email server for all business transactions means International conspired to defraud this Plaintiff in the Rhino transaction. That is not a plausible inference. Nor is it a demonstration of manifest agreement to participate in a RICO violation.

### 2. Plaintiff fails to state a claim for the underlying substantive RICO violation.

Plaintiff's RICO claim against International also fails because Plaintiff fails to plausibly and with particularity required under Rule 9(b) allege the elements of a

substantive RICO violation against Funding and Securities[6] pursuant to 18 U.S.C.

§ 1962(c). *See Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017). To state a

civil cause of action for a RICO violation of § 1962(c), a plaintiff must allege

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *UMB*

*Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) (citing *Crest Const. II, Inc. v.*

*Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quotation omitted)). "RICO 'does not cover all

instances of wrongdoing. Rather, it is a unique cause of action that is concerned with

eradicating organized, long-term, habitual criminal activity.'" *Sebrite Agency, Inc. v.*

*Platt*, 884 F. Supp. 2d 912, 918 (D. Minn. 2012) (quoting *Crest*, 660 F.3d at 353 (cleaned

up)). "The elements of a RICO claim must be pleaded with respect to each individual

defendant . . . and with particularity under Fed. R. Civ. P. 9(b)." *Sebrite*, 884 F. Supp. 2d

at 918 (internal citations omitted).

First, Plaintiff fails to plausibly allege the existence of an "associated in fact"

enterprise consisting of Funding and Securities. "An association-in-fact enterprise must

have at least three structural features: a purpose, relationships among those associated

with the enterprise, and longevity sufficient to permit these associates to pursue the

enterprise's purpose." *Id.* at 918–19 (quoting *Boyle v. United States*, 556 U.S. 938, 946

(2009).)  An "enterprise" requires discrete structure and existence uniting its members as

a cognizable group. *Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016).

---

[6] For this reason, International joins in the motion to dismiss asserted by Defendants Funding and Securities with respect to the RICO claim.

Aside from legal conclusions, Plaintiff has not alleged that Funding and Securities have formed an "ascertainable structure" separate and apart from the fact that Funding and Securities are sibling companies. Furthermore, Plaintiff failed to allege that the "Colliers Enterprise" would still exist absent the alleged fraudulent conduct that Plaintiff argues qualifies as racketeering activity. *See Crest*, 660 F.3d at 354. Indeed, Plaintiff alleges "The Colliers Enterprise also has a continuous structure, as each entity plays a similar role in each fraudulent transaction." (Compl. ¶ 279.) However, Plaintiff does not make any factual allegations how the purported enterprise of Funding and Securities would exist outside of the alleged fraudulent transactions.

Next, Plaintiff fails to properly allege Funding and Securities engaged in a "pattern of racketeering activity." "To satisfy the pattern element, a plaintiff must allege 'two or more related activity of racketeering activity that amount to or pose a threat of continued criminal activity.'" *Nelson v. Nelson*, 2015 WL 4136339, at *3 (D. Minn. July 8, 2015) (quoting *Nitro Distributing, Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)). Plaintiff does not allege open-ended continuity. While Plaintiff refers to a prior H2 transaction, the Eighth Circuit has held that closed-ended continuity requires related acts continuing over at least one year. *Crest*, 660 F.3d at 357-58. Here, Plaintiff alleges the H2 Transaction closed on May 31, 2022 (Compl. ¶ 200) and the Rhino Transaction funded February 2023. (*Id.* ¶ 183.) As a result, Plaintiff does not allege continuing acts beyond a year required to establish a pattern of racketeering.

33

## CONCLUSION

For the foregoing reasons, International respectfully requests that this Court grant its motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction and/or failure to state a claim upon which relief can be granted.

Dated:  March 13, 2026

**ANTHONY OSTLUND LOUWAGIE DRESSEN & BOYLAN P.A.**

By: *s/ Peter J. McElligott*
Peter J. McElligott (#397578)
pmcelligott@anthonyostlund.com
William R. Paterson (#401045)
wpaterson@anthonyostlund.com
60 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Telephone:  (612) 349-6969

**ATTORNEYS FOR DEFENDANT COLLIERS INTERNATIONAL GROUP, INC.**

34