**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNION EQUIPMENT FINANCE, LLC, a Nebraska limited liability company, | Court File No. 26-cv-1736 (LMP/DTS) |
| Plaintiff, | |
| v. | |
| COLLIERS EQUIPMENT TRUSTEE, LLC, a Delaware limited liability company; COLLIERS FUNDING LLC, a Delaware limited liability company; COLLIERS SECURITIES LLC, a Delaware limited liability company; COLLIERS INTERNATIONAL GROUP INC., a Canadian corporation; and AVALANCHE ENERGY CAPITAL LLC, a Delaware limited liability company, | **MEMORANDUM OF LAW OF DEFENDANTS COLLIERS EQUIPMENT TRUSTEE, LLC, COLLIERS FUNDING LLC, COLLIERS SECURITIES LLC IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| Defendants. | |

## INTRODUCTION

Plaintiff Union Equipment Finance, LLC (the "Plaintiff") appeared in and was represented by its current counsel (Barack Ferrazzano Kirschbaum & Nagelberg LLP) in "a trust proceeding against Trustee in Minnesota state court."   (Compl. ¶ 17.)  This proceeding resulted in the entry by the Minnesota District Court for Hennepin Country, Fourth Judicial District (the "State Court") of the Order of Dismissal with Prejudice and Judgment of the matter captioned, *In the Matter of Colliers Equipment Investment Trust III*, Court File NO. 27-TR-CV-24-24 (the "State Court Action") "and all claims that were or could have been asserted by the Petitioners against the Respondents (the Trustee and

Funding) and by Respondents against the Petitioners in the [State Court Action] are hereby dismissed with prejudice and on the merits . . ." (the "Judgment of Dismissal"). Declaration of Paul L. Ratelle ("Ratelle Dec."), Exhibit 1.[1]

Defendants Colliers Equipment Trustee, LLC, Colliers Funding LLC, and Colliers Securities LLC ("Securities and, together with the Trustee and Funding, the "Colliers Defendants") move this Court to dismiss Plaintiff's action under the doctrine of *res judicata*, which prevents the litigation of the claims in a subsequent action that were raised or could have been raised in the State Court Action. *Banks v. Int'l Union Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004); *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001) (per curiam). Here, Plaintiff, which was served as a party in the State Court Action and formally appeared in that action through its counsel, asserts claims against the Colliers Defendants in its Complaint that were or could have been raised in the State Court Action.

---

[1] This State Court Action was commenced by Petitioners under their *Amended Petition for Redress of Trustee's Breach of Trust, for Accounting of Trustee Fees Charged and for Trust Instructions* dated January 21, 2025 (the "Amended Petition"). Ratelle Dec., Exhibit 2. In this State Court Action, the Petitioners were Petitioners Stearns Bank, National Association, CTB Financial Services, LLC and Citizens Trust Bank and the Respondents were Colliers Equipment Trustee, LLC and Colliers Funding LLC. In the State Court Action, Plaintiff, through its counsel in the instant action, filed an appearance with the State Court after Plaintiff formally accepted service of the Petition in the State Court Action. Ratelle Dec., Exhibits 3 and 4. In the Appearance of Interested Party Union Equipment Finance, LLC and Response to Amended Petition, Plaintiff stated, among other things, "Union supports the relief requested in the Amended Petition. Union does not intend to file any pleading other than as may be requested by the Court." Ratelle Dec., Exhibit 3.

In the alternative, the Colliers Defendants also move this Court to dismiss Count XI against Funding and Securities asserting a claim under the federal RICO statute, 18 U.S.C. § 1962(c).  As discussed below, Plaintiff has failed to state a claim against Funding and Securities under RICO because, among other reasons, Plaintiff has failed to allege that either Funding or Securities conducted an enterprise through a pattern repetitive racketeering.

In the further alternative, the Colliers Defendants also move this Court to dismiss all claims against Securities for failure to state a claim, namely, Count I (fraud), Count IX (aiding and abetting), and Count X (civil conspiracy).

## **BACKGROUND**

### I.    State Court Action.[2]

In the Amended Petition filed in the State Court Action (and concerning which Plaintiff makes specific reference in its Complaint (Compl. ¶ 17)), the Petitioners, two of the beneficiaries of the Trust and participants in the Rhino Transaction described in the Complaint (Compl. ¶¶ 40-41), asserted claims against the Trustee and Funding pertaining to the same "Rhino Transaction" described by Plaintiff in its Complaint.  (Compl. ¶ 36.)[3]

---

[2] Although a court does not generally consider materials submitted by the parties outside the pleadings, a Court may consider "public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999).  In the instant case, the Plaintiff explicitly refers to the State Court Action in its Complaint and, moreover, the documents submitted by the Colliers Defendants in support of their motion to dismiss are public records filed in that action.

[3] *Compare*, Complaint ¶ 36 *with* Amended Petition ¶¶ 1 and 25.

In the Amended Petition, Union is identified as a known interested party.   (Pet. ¶ 16.) As a known interested party as well as beneficiary of the Trust and participant in the Rhino Transaction, Plaintiff accepted service of the Amended Petition (Ratelle Dec., Exhibit 4) and filed with the State Court its formal appearance in the State Court Action stating, among other things, "Union supports the relief requested in the Amended Petition.  Union does not intend to file any pleading other than as may be requested by the Court."  Ratelle Dec., Exhibit 3.

The claims in the Amended Petition and the in the Complaint arise out of the same nucleus of operative facts including, without limitation, allegations in the State Court Action and the Complaint that: (i) the Rhino Transaction involves $26.977,000 of financing of  four manufacturing lines (Comp. ¶¶ 33, 36 ad 37; Pet. ¶¶ 1, 25 and 33); (ii) the fees paid to the Trustee and/or Funding in connection with the financing of the Rhino Transaction were undisclosed and excessive (Comp. ¶¶ 73, 83, and 84; Pet. ¶¶ 2, 8, 38-41, 47 and 99-103); (iii) that Rhino Transaction involves the six participants and beneficiaries including the Plaintiff Comp. ¶¶ 40 and 41.; Pet. ¶¶ 1 and 16); (iv) the Rhino Transaction was documented by the execution of the following documents, the Investment Trust Agreement, the Participation Agreement, the Servicing Agreement, the Interim Funding Agreement, and the Master Lease (Comp. ¶¶ 118-144; Pet. ¶¶ 49-68); (v) the Rhino Transaction is described by the Term Sheet prepared by Funding and submitted to the participants for their review (Comp. ¶¶ 51-60; Pet. ¶¶ 26, 32, 36 and

69)[4]; (vi) a source of funds for the Rhino Transaction was a contract between Rhino and Honeywell Safety Products, USA, Inc., also known as the Honeywell Master Supply Agreement (Compl. ¶ 38; Pet. ¶ 34); (vii) Funding made misrepresentations regarding the Honeywell Master Supply Agreement (Compl. ¶¶ 105-117; PSJ Memo, pp. 21-22); (viii) alleged failure by the Trustee to record a fixture filing in the in Tarrant County, Texas (Compl. ¶¶ 184-186; Pet. ¶¶ 6 and 95-98); (ix) the Trustee breached the Interim Funding Agreement by disbursing funds to Rhino FW without requiring from Rhino FW a certificate of occupancy (Compl. ¶¶ 147-157; Pet. ¶ 92); (x) the Trustee secretly waived the certificate of occupancy requirement before funding (Compl. ¶¶ 147-157; PSJ Memo, pp. 25-29); (xi) the Trustee and Funding manipulated the Inspection Report Condition Precedent to funding the Rhino Transaction (Compl. ¶¶ 158-169; PSJ Memo pp. 59-33).

The Amended Petition was commenced by the Petitioners under the Minnesota Trust Code, Chapter 501C of Minnesota Statues, named only the Trustee and Funding as "interested persons" under Minn. Stat. § 501C.0201(b).  The Petitioners sought the recovery of damages allegedly sustained by the beneficiaries of the Trust, including the Plaintiff, as "interested persons" under Minn. Stat. § 501C.0201(b).  (Pet. ¶¶ 11-16.)

---

[4] In the Petitioners motion for partial summary judgment filed in the State Court Action, the Petitioners specifically argued that the Term Sheet contained "three material misrepresentations": (i) that Rhino's funding request was for $26,997,000; (ii) that there were no other domestic nitrile glove manufacturers as of 2020; and (iii) that the purported transaction structure and use of funds as described in the Term Sheet was untrue.  Ratelle Dec., Exhibit 5, *Memorandum in Support of Petitioners' Motion for Partial Summary Judgment on Counterclaims* ("PSJ Memo"), pp. 19-20.   Each of these alleged misrepresentations are described in the Complaint.  (Compl. ¶¶ 65, 89, and 99.)

Specifically, the Petitioners asserted against the Trustee (and Funding) the following claims, among others:

137. The Trustee acted with willful misconduct or gross negligence by disbursing the Trust's funds when the Trustee knew that the Glove Production CPs were not met and that Rhino FW was not able to operate the Manufacturing Lines.

138. The Trustee acted with willful misconduct or gross negligence by failing to obtain the information that Rhino FW did not have necessary air quality permits to allow it to operate the Manufacturing Lines until more than three (3) months after the Accelerated Funding Date.

139. The Trustee acted with willful misconduct or gross negligence by failing to adequately perfect the Investment Trust's lien rights against the Manufacturing Lines.

140. The Trustee acted with willful misconduct or gross negligence by failing to enforce the any of the Investment Trust's rights and remedies under the Transaction Documents and allowing the Manufacturing Lines to be rendered valueless.

141. As the trustee, the Trustee owed fiduciary duties of loyalty and care to the Trust and to the beneficiaries.

142. The Trustee breached that duty of care by recklessly disbursing the funds so that it could collect fees and failing to enforce rights and remedies for the Investment Trust's benefit.

143. The Trustee breached that duty of loyalty by paying itself fees out of Trust assets that were unauthorized by the Trust Agreement.

144. These breaches caused damages to the Investment Trust and beneficiaries.

(Pet. ¶¶ 137-144.)

To address these alleged breaches by the Trustee, the Petitioners invoked the subject matter jurisdiction of the State Court pursuant to, among other statutes, Minn. Stat. § 501C.0202(19) to redress the Trustee's alleged breach of fiduciary duty due to the alleged misconduct set forth above. (Pet. p. 23.) The specific relief sought under the Amended Petion, the Petitioner included an order by the Court for the Trustee to "restore the amount of funds prematurely disbursed by it, in an amount of no less that $26,977,000 plus

6

interest." (Pet., p. 27.)  This amount of $26,977,000 comprises the amount the participants (including the Plaintiff), collectively, advanced to the Trustee to fund the Rhino Transaction: "[S]ix community banks signed . . . Participation Agreements and an Investment Trust Agreement on January 31, 2023 (the "Closing") and became beneficiaries of the Trust. On February 24, 2023, (the "Funding Date") the Participants funded a total of $26,997,000, of which Union funded $12,997,000."  (Compl. ¶ 40.)

On September 14, 2025, the Petitioners, the Trustee and Funding executed and filed with the State Court a Stipulation of Dismissal pursuant to Minn, R. Civ. P. 41.01(a) (the "Stipulation").  (Ratelle Dec., Exhibit 6.)  Pursuant to the terms of the Stipulation, on November 18, 2025, the State Court entered its Judgment of Dismissal, ordering that the State Court Action "and all claims that were or could have been asserted by the Petitioners against the Respondents (the Trustee and Funding) and by Respondents against the Petitioners in the [State Court Action] are hereby dismissed with prejudice and on the merits . . ." (the "Judgment of Dismissal") (Ratelle Dec., Exhibit 1.)

At no time between the filing of the Stipulation and the entry of the Judgment of Dismissal did the Plaintiff object to or move to carve out from the Judgment of Dismissal any of its claims.  Instead, as an interested person to the State Court Action and, more significantly, as a party in the State Court Action represented by the same counsel who represented the Petitioners and affirmatively supported the relief sought by the Petitioners, Plaintiff at a minimum acquiesced to the State Court's entry of its Judgment of Dismissal.

In January 2026, Plaintiff commenced this lawsuit the Colliers Defendants and others. (*See generally* Compl.) Plaintiff asserts four counts against Securities: Count I (fraud), Count IX (aiding and abetting), Count X (civil conspiracy), and Count XI (RICO); nine counts against Funding: Count I (fraud), Count II (fraud-update #6); Count III (fraud-required permits), Count V (fraud-inspecting engineer report), Count VI (breach of contract), Count VII (fraud-funding all tranches), Count IX (aiding and abetting), Count X (civil conspiracy), and Count XI (RICO); eight counts against the Trustee: Count III (fraud-required permits), Count IV (breach of contract-trust agreement), Count V (fraud-inspecting engineer report), Count VI (breach of contract), Count VII (fraud-funding all tranches), Count VIII (breach of fiduciary duty/breach of trust); Count IX (aiding and abetting), and Count X (civil conspiracy).

## ARGUMENT

I.     **The Complaint Should Be Dismissed Against the Colliers Defendants under the Doctrine of Res Judicata.**

The doctrine of res judicata specifically bars parties from "relitigating claims arising from the original circumstances, even under new legal theories." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004) (*citing Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000)).  Because the Plaintiff had the opportunity to litigate the same facts and issues, against the same parties or their privies, in State Court Action as it seeks to do in its Complaint, then Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief can be granted against the Colliers Defendants. *See* Fed. R. Civ. P. 12(b)(6) (allowing a defendant to move to dismiss for "failure to state

a claim upon which relief can be granted.") "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). "[D]ocuments necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (*citing Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.2004)). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti*, 666 F.3d at 1151. As discussed above, Plaintiff expressly references the State Court Action in its Complaint (Compl. ¶ 17.) In addition, the documents filed with the State Court in connection with the State Court Action and attached as exhibits to the Declaration of Paul L. Ratelle filed with this Motion to Dismiss should be considered by this Court in determining that the doctrine of res judicata bars Plaintiff's claims against the Colliers Defendant. Rule 12(b)(6) motions do not automatically convert into Rule 56 motions for summary judgment simply because one party submits additional matters in support of or in opposition to the motion, as courts may consider matters of the public record or which do not contradict the complaint when deciding a Rule 12(b)(6) motion. *Casazza v. Kiser*, 313 F.3d 414, 416 (8th Cir. 2002). Court records represent the type of

public records which courts may consider. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978).

The doctrine of res judicata is derived from the Full Faith and Credit Statute, which states that judicial proceedings "shall have the same full faith and credit in every court within the United States. . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Because this motion asks the Court to consider the preclusive effect of a case arising from Minnesota state court, Minnesota law governs the application of res judicata. *St. Paul Fire and Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 770 (D. Minn. 2006); *Laase v. County of Isanti*, 638 F.3d 853 (8th Cir.2011); *Ashanti*, 666 F.3d at 1151.

Under Minnesota law, res judicata bars subsequent claims when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

Res judicata applies both to claims that were actually litigated and to those claims that could have been litigated in an earlier action. *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P*, 732 N.W.2d 209, 220 (Minn. 2007). The "common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions." *Hauschildt*, 686 N.W.2d at 840-41(*quoting McMenomy v. Ryden*, 148 N.W.2d 804, 807 (1967)). However, res judicata will not bar

claims that did not exist when the first suit was filed, regardless of whether the new claims share the same set of factual circumstances. *Id*. at 841.

### A.   The State Court Action Involved the Same Set of Factual Circumstances as the Plaintiff's Complaint.

The State Court Action all the same set of factual circumstances as the Plaintiff's Complaint.  The State Court Action involved same underlying facts alleged by the Plaintiff in its Complaint including, all the transaction documents underlying the Rhino Transaction including the Term Sheet, the participation interest acquired by the Plaintiff, many of the same alleged acts of misconduct including alleged misrepresentations pertaining to the Honeywell Master Supply Agreement, the Term Sheet, the engineer inspection report, and the fees paid to the Trustee in connection with the funding of the Rhino Transaction.  In addition, the Amended Petition also sought to recover, as damages, the amounts paid by all of the participants (including the Plaintiff) to acquire their participation interest in the Rhino Transaction and fund the Rhino Transaction.

### B.   Same Parties or Their Privies.

Under the doctrine of res judicata, a subsequent claim is barred only if the earlier claim involved the same parties or their privies.  *Rucker v. Schmidt*, 768 N.W.2d 408, 412 (Minn. Ct. App. 2009)). "'Privity does not follow one specific definition, but rather expresses the idea that a judgment should also determine the interests of certain non-parties closely connected with the litigation.'" *Id*. at 412-413 (*quoting Reil v. Benjamin*, 584 N.W.2d 442, 445 (Minn. Ct. App. 1998). "Privity 'expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but

who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.'" *Id*. at 413 (*quoting Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 47 (Minn. 1972)).

In this case, although the Plaintiff was not a Petitioner in the State Court Action, the Plaintiff was nevertheless a party to that action. The Plaintiff specifically admitted service upon it of the Amended Petition. The Amended Petition expressly identified the Plaintiff as an "interested person" under Minn. Stat. 501C.0201(b). The Plaintiff also filed with the State Court an appearance in which the Plaintiff expressly the relief sought under the Amended Petition. Indeed, the Plaintiff was represented in the State Court Action and only by the same attorneys who represented the Petitioners, but also by the same attorneys representing the Plaintiff in this action.

In addition to the foregoing, the Amended Petition expressly identified Funding as an "interested person" under Minn. Stat. 501C.0201(b). Although the Amended Petition does not identify Securities as an "interested person" under Minn. Stat. 501C.0201(b), it nevertheless identifies Securities' involvement in the marketing "to community banks the opportunity to fund a $26,997,000 financing of the new nitrile glove manufacturing facility in Texas" (Pet. ¶ 1.)

Because "[p]rivity depends upon the relation of the parties to the subject matter," *Hentschel v. Smith*, 153 N.W.2d 199, 206 (Minn. 1967) and the Plaintiff was a party in the State Court Action, Plaintiff had an interest in and were directly connected to the State Court Action and, accordingly, privity is satisfied.

**C.    Final Judgment.**

12

A final judgment of dismissal with prejudice was entered by the State Court in the State Court Action.

### D.      Full and Fair Opportunity to Litigate

Here, as a party to the State Court Action, Plaintiff had the opportunity to raise any concerns about the claims presented to the State Court through the Amended Petition. Indeed, the Plaintiff expressly passed on the opportunity to file any pleadings in the State Court Action by stating in its filed Appearance that "Union does not intend to file any pleadings other than as may be required by the Court."  In addition, the attorneys that represented the Petitioners also represented the Plaintiff in the State Court Action. Therefore, the Plaintiff, through its counsel in the State Court Action, was fully aware of the prospect that a final judgment of dismissal would be entered by the State Court in the State Court Action.  In sum, the Plaintiff did not lack the opportunity to raise its claims in the State Court Action, but simply chose not to pursue them before the State Court.

Because each element of the doctrine of res judicata has been satisfied, the Colliers Defendants submit that res judicata bars the allegations raised by the Plaintiff in its Complaint.  Plaintiff had the opportunity to litigate the same facts and issues, against the same parties or their privies in state court.  Although Plaintiff seeks to raise no legal arguments then were raised by the Petitioners in the State Court Action, res judicata specifically bars parties from "relitigating claims arising from the original circumstances, even under new legal theories." *Hauschildt*, 686 N.W.2d at 837.  Accordingly, Plaintiff's

Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## II. All of Plaintiff's Claims Against Securities Should Be Dismissed for Failing to State a Claim Upon Which Relief Can Be Granted.

The Complaint should be dismissed against Securities because the Complaint fails to state a claim upon which relief can be granted against Securities. Fed. R. Civ. P. 12(b)(6).

Although this Court is to accept as true the factual allegations in the Complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Vang v. PNC Mortgage, Inc.*, 517 Fed. App'x. 523, 525 (8th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). A complaint cannot simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id*. at 561.

Here, the Court should dismiss all claims against Securities for failure to state a claim: Count I (fraud), Count IX (aiding and abetting), Count X (civil conspiracy), and Count XI (RICO).

### A.     The Court should dismiss Count I (Fraud) against Securities.

The Court should dismiss Count I (fraud) against Securities because the Complaint does not state a legally sufficient fraud claim against Securities. "In order to maintain a common law fraud claim under Minnesota law, a plaintiff must prove: (1) a false representation of material fact that is susceptible of knowledge; (2) made with knowledge that it is false or asserted as if it is based on the person's own knowledge without knowing whether it is true or false; (3) made with the intent to induce another to act in reliance on the representation; and (4) causing the other party to act in reliance to its detriment." *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 491 (8th Cir. 2004). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "'Particularity,' as the term is employed in Rule 9(b), 'means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Helleloid v. Indep. Sch. Dist. No. 361*, 149 F. Supp. 2d 863, 878 (D. Minn. 2001) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

### 1.     Plaintiff does not plead that Securities made any fraudulent statements to Plaintiff.

Plaintiff's fraud claim fails as a matter of law because Plaintiff has failed to please that Securities made any representations to Plaintiff.

15

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the nonmoving party. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir.2011). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To adequately plead a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Raynor v. Nat'l Rural Utilities Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (citation omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph

16

of any newspaper story." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (citation omitted).

Here, Plaintiff fails to allege that Securities made any fraudulent statements to the Plaintiff. Although Plaintiff identifies a few allegedly fraudulent statements for Count I, they all stem from the Term Sheet. (*See* Compl. ¶ 209.)  Securities is not a party to the Term Sheet and, more importantly, did not convey the Term Sheet to Plaintiff. (*See* Compl. Ex. 4.)  At most, Plaintiff alleges, vaguely, that Securities provided "input" to the Term Sheet, but fails to offer any additional details beyond "input."  (*See* Compl. ¶ 54 ("The Term Sheet was prepared by Funding, with input from Securities and Avalanche.").)  Plaintiff admits that Securities did not provide the Term Sheet to the Plaintiff. (*See id.* ¶ 52 ("Union received the Term Sheet from Weingart, an employee of Funding, on November 13, 2022. . ..").) Moreover, in addition to the fact that Securities is not a party to any of the documents signed by the Trustee or Funding or the Plaintiff and which comprise the Rhino Transaction, the Plaintiff fails to identify a single statement made by Securities to Plaintiff, let alone any false statement,  upon which Plaintiff relied to enter into the Rhino Transaction. (*See* Compl. Ex. 4 at 9 (listing parties (which do not include Securities).)[5]

---

[5] Plaintiff alleges that the Term Sheet "intentionally obscures each of the Colliers Parties' roles in the transaction . . .." (Compl. ¶ 57.) However, there is only one Colliers entity that is a party to the Term Sheet—Colliers Funding LLC. (*See* Compl. Ex. 4 at 1 ("Colliers Funding LLC has secured the opportunity . . .."); *id.* at 9 (listing parties to the transaction (which do not include Securities).)

17

Because Securities is not a party to the Term Sheet and did not provide to the Plaintiff, then Securities cannot be liable for any allegedly fraudulent statements contained in the Term Sheet. *See Feliciano-Munoz v. Rebarber-Ocasio*, 2018 WL 8805486, at *8 (D.P.R. Sept. 28, 2018), *aff'd in part, vacated in part, remanded*, 970 F.3d 53 (1st Cir. 2020) ("It follows that Defendant could not have made false representations to Air America, Inc. during the formation of the contract between him and Mr. Feliciano-Muñoz because Air America, Inc. was not a party to the contract."); *Bridge Cap. Invs. II v. Small*, 144 F. App'x 762, 763 (11th Cir. 2005) ("Susquehanna was not a party to the 1990 Small Agreement-and thus cannot possibly have induced Small to enter into it . . ..").

Because Plaintiff does not allege that Securities made any statements, let alone any misstatements or fraudulent statements to Plaintiff, Plaintiff appears to attribute Securities alleged statements made by other Colliers' entities. This claim cannot be sustained under fundamental corporate law. Regardless of any affiliated relationship between Securities, on the one hand, and the Trustee and Funding, on the other hand, Securities is a separate legal entity and, therefore, Securities is not liable for the alleged conduct of a separate company: "[a]s a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship." *In re Ins. Brokerage Antitrust Litigation*, 618 F.3d 300, 341, n. 44 (3rd Cir. 2010) (*citing* William Meade Fletcher, *Cyclopedia of Law of Private Corporations* § 33, at 89 (perm. ed. rev. vol. 2006)); *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979)).

18

Because Plaintiff has failed to plead with particularity as to Securities the "who", "what", and "how", its fraud claim against Securities fails. Securities did not defraud Plaintiff because it never made *any* representations to Plaintiff.

### 2.      Plaintiff cannot plausibly allege reliance on Securities.

Plaintiff's fraud claim against Securities should also be dismissed because Plaintiff admits that it did not rely on Securities' alleged involvement in the Rhino Transaction. "Parties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance.'" *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (quoting *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 805 (8th Cir. 2017)).

In the Complaint, Plaintiff alleges that it relied on three alleged misrepresentations within the Term Sheet to move forward with the transaction. (*See* Compl. ¶ 59.) However, none of these alleged misrepresentations is attributable to any specific conduct by Securities and Securities did not communicate them to Plaintiff. (*Id.*)

In addition, Plaintiff alleges that the misrepresentations it alleges to have relied on "were not contradicted by the subsequent Participation Agreement or Trust Agreement."[6]

---

[6] The Participation includes an integration clause, which provides in part: "This Participation Agreement, the Participant's Certificate of Participation, and the Investment Trustee Documents shall contain the entire understanding of the parties hereto in respect to the transaction contemplated hereby and supersedes all prior agreements and understandings between the parties with respect to such subject matter." (Compl. Ex. 11 at § 10.12.) This Agreement therefore supersedes the Term Sheet altogether anyway. *See Stromberg v. Smith*, 423 N.W.2d 107, 109 (Minn. Ct. App. 1988) ("[I]f a contract is a complete integration of the parties' agreements, prior agreements within the scope of the

(*See id.* ¶ 60.)  Significantly, Securities is not a party to the Participation Agreement or the Trust Agreement.  This allegation therefore underscores that Plaintiff did not rely on Securities because Plaintiff executed the subject documents with no expectation that Securities would be a party to any of them.  Further, because of this, rather than plead with particularity what, if anything, Securities represented to Plaintiff, Plaintiff admits the opposite. As a result, Plaintiff's claim fails as a matter of law. *See Lahti v. Countrywide Bank, FSB*, 2012 WL 4815075, at *4 (D. Minn. Oct. 10, 2012) ("[B]oth fraud claims fail because [plaintiff] cannot demonstrate she relied on any statements by either Defendant.").

In sum, Plaintiff does not plausibly or with particularity allege that Securities made any misrepresentations to Plaintiff or that Plaintiff relied on any misrepresentations that Securities made (nor did it rely on Securities' involvement, which is not a fraudulent statement). As a result, Plaintiff's fraud claim against Securities fails as a matter of law and needs to be dismissed.

### B.   The Court should dismiss Count IX (Aiding and Abetting) against Securities.

The Court should dismiss Count IX against Securities because Plaintiff fails to plead aiding and abetting as a matter of law. "Under Minnesota law, to establish a claim for aiding and abetting, the plaintiff must show: (1) the primary tortfeasor committed a tort that injured the plaintiff; (2) the defendant knew that the primary tortfeasor's conduct

---

contract are discharged regardless of consistency." (citing *Restatement (Second) of Contracts* § 213 (1981))).

was a breach of duty; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in that breach." *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 992 F.3d 674, 680–81 (8th Cir. 2021). Similar to the fraud claim above, to survive a motion to dismiss, Plaintiff's aiding and abetting must meet Rule 9(b)'s heightened pleading standard. *See Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 2021 WL 2686079, at *4 (D. Minn. June 30, 2021), *aff'd*, 48 F.4th 896 (8th Cir. 2022) ("Aiding and abetting fraud claims must meet Rule 9(b)'s heightened pleading standards.").

### 1.    The aiding and abetting claim does not satisfy Rule 9(b).

Here, the claim fails because Plaintiff does not plead, let alone with particularity, any of the elements of aiding and abetting. In fact, Plaintiff's aiding and abetting count only has two meaningful paragraphs. One alleges that "[a]s set forth in Counts I, II, III, V, VII, and VIII, Defendants have committed torts that caused injury to Union." (Compl. ¶ 266.)  The other paragraph alleges that "[e]ach Defendant was aided and abetted in committing such torts by the remaining Defendants, knew that the conduct constituted a tort and provided substantial assistance and/or encouragement." (Compl. ¶ 267.) This approach, where the Plaintiff relies only on legal conclusions, is insufficient for Plaintiff to carry satisfy its obligation to plead specific facts.

In conclusory fashion, Plaintiff alleges that Securities aided and abetted the other Defendants on six different torts. (Compl. ¶ 266.) One of those torts is the fraud claim also pleaded against Securities, addressed above. Importantly, as to the other five torts, Securities is not mentioned once in Plaintiff's corresponding allegations. (*See generally*

21

Compl.) As examples, Plaintiff alleges that Securities aided and abetted, among other courts, the commission of Count II (Fraud – Update #6), Count III (Fraud-Required Permits), and Count V (Fraud-Inspecting Engineer Report). But Securities is not mentioned in any of Plaintiff's allegations supporting these counts.

Plaintiff's vague and conclusory allegations are additional reasons that support the dismissal of the aiding and abetting claim against Securities.

> **2.      The aiding and abetting claim should be dismissed because the Complaint does not plausibly allege that Securities substantially assisted or encouraged any alleged tort.**

The aiding and abetting claim also fails as a matter of law because the Complaint does not plausibly allege that Securities substantially assisted or encouraged any alleged tort. As the Supreme Court stated, "[t]he point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023); *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292, (2025) ("[A]iding and abetting usually requires misfeasance rather than nonfeasance. Absent an 'independent duty to act,' a person's 'failure[s],' 'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." (quoting *Twitter*, 598 U.S. at 489)).

Substantial assistance requires an affirmative step that was a substantial factor in the alleged wrongdoing. *See Varga v. U.S. Bank Nat. Ass'n*, 952 F. Supp. 2d 850, 859 (D. Minn. 2013), *aff'd,* 764 F.3d 833 (8th Cir. 2014) ("Substantial assistance requires an 'affirmative step' on the part of the aider-and-abettor . . . that is a 'substantial factor' in causing the [alleged tort].") (internal citations omitted). To determine whether a

defendant substantially assisted an alleged tort, courts consider "the nature of the act encouraged, the amount of assistance given, the aider-and-abettor's presence or absence at the time of the tort, its relation to the primary actor, and its state of mind." *Varga*, 952 F. Supp. 2d at 859; *see also* Restatement (Second) of Torts § 876 (1979) (detailing five factors for substantial assistance). "The elements of knowledge and substantial assistance are analyzed in tandem." *Zayed v. Associated Bank, N.A.*, 2017 WL 424855, at *2 (D. Minn. Jan. 31, 2017), *aff'd*, 913 F.3d 709 (8th Cir. 2019).

The Complaint does not plausibly allege—with particularity—substantial assistance by Securities. The only allegation relating to substantial assistance is the bare conclusion that "Defendants . . . knew that the conduct constituted a tort and provided substantial assistance and/or encouragement." (Compl. ¶ 267.)  This allegation is a bare legal conclusion and, as such, the Court is not bound by Plaintiff's legal conclusion regarding substantial assistance. *See Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) ("The court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)).

Setting aside Plaintiff's legal conclusion and parsing through Plaintiff's other allegations highlights that Plaintiff has failed to plead any of the facts to establish a plausible claim that Securities substantially assisted any party to commit any tort.

Securities' alleged involvement in the Rhino Transaction is limited to vague allegations of Securities' "input" to the Term Sheet and receipt of an email from Al Weingart discussing his calculation of the fees for the Rhino Transaction.  (Compl. ¶¶ 54 and 75.) This involvement is not substantial assistance as a matter of law. *See Varga,* 952

F. Supp. 2d at 859 ("It is not enough for an aider-and-abettor to act in some way that incidentally advances the breach."); *see also Twitter,* 598 U.S. at 499 ("[W]e generally do not think that internet or cell service providers incur culpability merely for providing their services to the public writ large. Nor do we think that such providers would normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—even if the provider's conference-call or video-call features made the sale easier.").

Importantly, Plaintiff does not plead how any of the alleged actions taken by Securities substantially assisted the alleged fraud. That is, Plaintiff does not allege that Securities' actions were critical to facilitating any alleged fraud. (*See generally* Compl.)

In addition, absence of any specific allegations that Securities substantially assisted any of the Counts in Plaintiff's Complaint, Plaintiff does not plead with particularity or plausibility that Securities knew that the other defendants allegedly intended to harm Plaintiff. "An aider and abettor's knowledge of the wrongful purpose is a crucial element in aiding or abetting cases." *Zayed*, 2017 WL 424855, at *3 (quoting *E–Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012)).

In sum, Plaintiff's aiding and abetting allegations are deficient particularly in light of the heightened pleading standard under Rule 9(b). Plaintiff does not allege that Securities substantially assisted any tort or that Securities provided assistance with the knowledge of any alleged wrongdoing and the intent to assist the alleged wrongdoing. Plaintiff's claim fails as a matter of law and needs to be dismissed.

24

### C.  The Court should dismiss Count X (Civil Conspiracy) against Securities.

Plaintiff's claim for civil conspiracy suffers from the same deficiencies as the aiding and abetting claim. Plaintiff does not allege with sufficient particularity that Securities had a meeting of the minds with any other Defendants to defraud Plaintiff in the Rhino Transaction, nor does Plaintiff allege that Securities committed an overt act to defraud Plaintiff in the Rhino Transaction.

To properly plead civil conspiracy, Plaintiff must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose. *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 838 (D. Minn. 2012). The elements of a conspiracy are a concerted action, a specific intent to achieve an unlawful purpose, and commission of an overt act in furtherance of the conspiracy. *Prestressed Concrete, Inc. v. Bladholm Bros. Culvert Co.,* 498 N.W.2d 274, 277 (Minn. Ct. App. 1993). Furthermore, "a plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together" to injure the plaintiff. *Tatone,* 857 F. Supp. 2d at 839 (citing *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988)).

The "alleged conspirators must have a meeting of the minds regarding 'a plan or purpose of action to achieve the contemplated result.'" *Marable v. City of Minneapolis*, 2020 WL 2312940, at *10 (Minn. Ct. App. May 11, 2020) (quoting *Bukowski v. Juranek*, 35 N.W.2d 427, 429 (Minn. 1948)). It is not sufficient for a plaintiff to cut and paste the elements of a cause of action into a complaint and then expect the claim to survive a

25

motion to dismiss. *See Segelbaum v. MW Cap., LLC,* 673 F.Supp.2d 875, 880 (D. Minn. 2009) ("A plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy.") (citing *Twombly,* 550 U.S. at 555).

With respect to the civil conspiracy claim (Count X), Plaintiff's allegations are little more than cut and paste of the elements. (*See* Compl. ¶¶ 269-272.) Plaintiff lumps all Defendants together, alleging "Defendants worked together to accomplish their agreed and shared objective…through the torts described above…" (Compl. ¶¶ 269-270.) Plaintiff does not differentiate between any of the Defendants and does not identify the underlying torts[7] giving rise to the alleged conspiracy. Plaintiff fails to allege the conspiracy with sufficient particularity.

More importantly, there is no allegation beyond the vague allegations of Securities' "input" to the Term Sheet and receipt of an email from Al Weingart discussing his calculation of the fees for the Rhino Transaction.  (Compl. ¶¶ 54 and 75.) Therefore, the legal conclusion that any employee or representative of Securities had a meeting of the minds with any other Defendants to defraud Plaintiff of anything is insufficient as a matter of law. Relatedly, the Complaint is also devoid of any allegation that Securities committed any overt act to defraud Plaintiff in the Rhino Transaction. Because Plaintiff has failed to allege that Securities committed an overt act with respect

---

[7] A civil conspiracy claim must be based on an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997); *Robert Allen Taylor Co.*, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016).  Plaintiff's vague reference to "torts described above" that forms the basis of Plaintiff's civil conspiracy claim highlights the criticized kitchen sink approach taken by Plaintiff.

to the Rhino Transaction to defraud or injure Plaintiff, the civil conspiracy claim fails to state a claim against Securities.

### D.    The Court should dismiss Count XI (RICO) against Funding and Securities.

For Count XI, Plaintiff asserts yet another conspiracy claim against the Colliers Defendants, but under the guise of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Specifically, Plaintiff alleges Funding and Securities committed substantive RICO violations under 18 U.S.C. § 1962(c).  However, because Plaintiff's RICO claim is deficient as a matter of law, it should be dismissed for failure to state a claim.

Plaintiff's RICO claim against funding and Securities fails because Plaintiff fails to plausibly and with the particularity required under Rule 9(b) allege the elements of a substantive RICO violation against Funding and Securities pursuant to 18 U.S.C. § 1962(c). *See Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017). To state a civil cause of action for a RICO violation of § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) (citing *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quotation omitted)). "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 918 (D. Minn. 2012) (quoting *Crest*, 660 F.3d at 353 (cleaned up)). "The elements of a RICO claim must be pleaded with respect to each individual

27

defendant . . . and with particularity under Fed. R. Civ. P. 9(b)." *Sebrite*, 884 F. Supp. 2d at 918 (internal citations omitted).

First, Plaintiff asserts that the "Colliers Enterprise" is an "associated in fact" enterprise. (Compl. ¶ 276.) However, Plaintiff fails plausibly to allege the existence of an "associated in fact" enterprise. "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Sebrite*, 884 F. Supp. 2d at 918–19 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009).) An "enterprise" requires discrete structure and existence uniting its members as a cognizable group. *Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016).

Aside from legal conclusions, Plaintiff has not alleged that Funding and Securities have formed an "ascertainable structure" separate and apart from the fact that Funding and Securities are sibling companies. Furthermore, Plaintiff has failed to allege that the "Colliers Enterprise," referred to in the Complaint (Compl. ¶ 276), would still exist absent the alleged fraudulent conduct Plaintiff argues qualifies as racketeering activity. *See Crest*, 660 F.3d at 354. Instead, Plaintiff alleges "The Colliers Enterprise also has a continuous structure, as each entity plays a similar role in each fraudulent transaction." (Compl. 279.) However, Plaintiff fails to make any factual allegations how the purported enterprise of Funding and Securities would exist outside of the alleged fraudulent transactions. As explained by the Sebrite Court:

> Under longstanding Eighth Circuit precedent, an alleged RICO enterprise must also have "an ascertainable structure distinct from the conduct of a pattern of racketeering." *Crest Const. II*, 660 F.3d at 354 (*quoting United*

28

> *States v. Lee*, 374 F.3d 637, 647 (8th Cir.2004)); *see also United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir.1982) ("[A]n enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts.")

*Sebrite*, 884 F. Supp. 2d at 919.

In addition, Plaintiff fails to plead facts that Funding and Securities engaged in a "pattern of racketeering activity." "To satisfy the pattern element, a plaintiff must allege 'two or more related activity of racketeering activity that amount to or pose a threat of continued criminal activity.'" *Nelson v. Nelson*, 2015 WL 4136339, at *3 (D. Minn. July 8, 2015) (quoting *Nitro Distributing, Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)). This requirement is commonly referred to as "continuity plus relationship." *Sebrite*, 884 F. Supp. 2d at 920-21 (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1353 (8th Cir.1997) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). As to continuity, a plaintiff may allege either open-ended or closed-ended continuity. *Sebrite*, 884 F. Supp. 2d at 921. Here, Plaintiff's Complaint fails to allege either open-ended or closed-ended continuity. In either case, Plaintiff's RICO claims fails.

Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir.2008) ("A plaintiff may establish open-ended continuity by showing that the predicate acts themselves involve a distinct threat of long-term racketeering activity....").

29

There are no facts alleged in the Complaint that support a plausible inference that Funding's and Securities' alleged predicate acts of wire fraud and bank fraud involve a distinct threat of long term racketeering activity as would be necessary to establish open-ended continuity. *Id*. Rather, Plaintiff alleges in conclusory fashion that the predicate acts "by their nature pose a threat of repetition." (Compl. ¶ 298.) This allegation is deficient as a matter of law.

Although Plaintiff refers to the H2 Transaction, suggesting closed-ended continuity,[8] the Eighth Circuit has held that closed-ended continuity requires related acts continuing over at least one year. *Crest*, 660 F.3d at 357-58. Here, Plaintiff alleges the H2 Transaction closed on May 31, 2022 (Compl. ¶ 200) and the Rhino Transaction closed on January 31, 2023 and funded February 24, 2023, less than nine months thereafter. (Compl. ¶¶ 145, 183.)  As a result, Plaintiff fails to allege continuing acts beyond the year required to establish a pattern of racketeering.

---

[8] In its Complaint, Plaintiff incorrectly alleges that the Colliers Equipment Trust III created by the Trustee for the Rhino Transaction was also involved in the H2 Transaction. (Compl. ¶ 56, n. 1.) The exhibits to the Complaint that relate to the H2 Transaction clearly state that Colliers Equipment Trust II, not Colliers Equipment Trust III, is the trust involved. *Compare* Exhibit 20 *with* Exhibit 13 of the Complaint.

From Exhibit 20 (the ESG-H2 Transaction):

Lessor: COLLIERS EQUIPMENT TRUSTEE LLC, not in its individual capacity (except as provided in the Master Lease) but as trustee of the Colliers Equipment Investment Trust II.

From Exhibit 13 (the Rhino Transaction):

Lessor: COLLIERS EQUIPMENT TRUSTEE LLC, not in its individual capacity (except as provided in the Master Lease) but as trustee of the Colliers Equipment Investment Trust III

In sum, Plaintiff's RICO claims fails for the additional reason that Plaintiff has failed to allege that Funding and Securities engaged in a "pattern of racketeering activity."

## CONCLUSION

For the foregoing reasons, the Colliers Defendants respectfully request that this Court grant their motion to dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated: March 13, 2026.                    **FABYANSKE, WESTRA, HART &**
                                          **THOMSON, P.A.**

By:     */s/ Paul L. Ratelle*
        Paul L. Ratelle (#127632)
        pratelle@fwhtlaw.com
        80 South 8th Street, Suite 1900
        Minneapolis, MN 55402
        (612) 359-7600 (P)
        (612) 359-7602 (F)
        *Attorneys for Defendants Colliers Equipment*
        *Trustee, LLC, Colliers Funding LLC and*
        *Colliers Securities LLC*